IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| TIA DRUMMOND, | : | |
|---|---|---|
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 18-293-RGA |
| | : | |
| AMAZON.COM.DEDC, LLC, | : | |
| | : | |
| Defendant. | : | |

Tia Drummond, Newark, Delaware; Pro Se Plaintiff.

Justin K. Victor, Esquire, Morgan Lewis & Bockius LLP, Wilmington, Delaware, Counsel for Defendant.

**MEMORANDUM OPINION**

October 31, 2018
Wilmington, Delaware

**ANDREWS, U.S. District Judge:**

Plaintiff Tia Drummond, who proceeds *pro se*, filed this employment discrimination action on November 8, 2017, in the Superior Court of the State of Delaware in and for New Castle County. (D.I. 1). Defendant Amazon.com, Inc. removed the action to this Court on February 21, 2008, after Plaintiff indicated her claims included a hostile work environment claim under Title VII. (D.I. 1-3 at 12-13). The Court has jurisdiction pursuant to 28 U.S.C. § 1331. On March 9, 2018, Plaintiff filed an amended complaint. (D.I. 6). Pending before the Court is Defendant's Motion to Dismiss and Plaintiff's opposition. (D.I. 7, 8, 9). Briefing on the matter is complete.

## BACKGROUND

Plaintiff is a Black/African American female (D.I. 6 at 19) who was employed by Defendant. The original complaint raised employment discrimination claims under Delaware law. (D.I. 1-1). The amended complaint raises employment discrimination claims "under the Federal Civil Rights statu[t]e," presumably 42 U.S.C. § 2000e, *et seq.*, for retaliation, harassment (hostile work environment), and discrimination (race and gender), but does not mention Delaware's employment discrimination statutes. (D.I. 6 at 18-20). It also contains an intentional infliction of emotional distress claim under state law. (*Id.* at 20).

On January 7, 2016, Plaintiff was at her work station working alongside Kenneth Jeffreys, a "mature white male." (*Id.* at 2). A box she had made was not the appropriate size, and she began searching for an appropriate-sized box. (*Id.* at 2-3). "Without warning," she noticed Jeffrey's arm, and then his hand, "going across [her] face, reaching to pull out the box [she had] just made." (*Id.* at 3). Plaintiff was irritated

1

by Jeffreys' action; she pushed the box back, stating that she did not need it. (*Id.*). Jeffreys moved back and threatened her, "You're about to get smacked." (*Id.*). Plaintiff was "livid" and "challenged him to do what he said he was going to do while at the same time yelling for a manager or [Process Assistant," but no one "budged." (*Id.*). Plaintiff did not feel safe and did not take the threats lightly, "especially from a male." (*Id.*). Plaintiff "logged off and left to report the incident to [her] Area Manager, David "Brian" Byers," a white male. (*Id.*) Plaintiff explained what had happened, and Byers escorted Plaintiff to HR so she could file an incident report. (*Id.*).

The next day Plaintiff was called to HR about the incident. She met with two HR individuals, both white males. She explained what happened the day before. The incident had been video-recorded. It was viewed on a monitor, and Plaintiff was told that should something like this happen again, to "just walk away, and come to HR." (*Id.* at 4). Plaintiff responded that she was a domestic violence victim and thought she handled the situation "very well." (*Id.*). Plaintiff was asked, "if the associate apologizes, can you accept his apology and all [will] be well?" (*Id.*). Plaintiff answered, "No." (*Id.* at 4-5).

On January 16, 2016, Plaintiff became upset and left work early after learning that Jeffreys was still employed. (*Id.* at 5). On January 20, 2016, Plaintiff told Defendant's General Manager that she "fe[lt] unsafe," and that it was unfair that Jeffreys was still employed. (*Id.*). The General Manager told Plaintiff to meet with him on January 27, 2016, after he completed an investigation. (*Id.*) When Plaintiff went to meet with the general manager, he was in a meeting. (*Id.*)

The morning of January 28, 2016, Plaintiff received a "time off task" or "TOT" warning. (*Id.* at 6). Later that day, Plaintiff was told to report to HR. (*Id.*). When she arrived, she was told she was being terminated for being TOT for 236 minutes the prior day, that is, the day when she was supposed to meet with the General Manager. (*Id.*). Plaintiff stated the termination was in retaliation for going to the General Manager, and she appealed the termination. (*Id.*). The next day, Plaintiff filed "a discrimination claim [with] the Department of Labor against Amazon for retaliation." (*Id.*). Following an appeal hearing before the General Manager, Plaintiff received an email to return to work on her next scheduled work day and notified that TOT would be resolved with a first written warning. (*Id.* at 6-7).

Plaintiff returned to work on February 10, 2016. (*Id.* at 7). The Area Manager, Byers, mocked her every single day of the week, making comments about a write-up or first written warning. (*Id.*). On February 13, 2016, Byers gave Plaintiff a TOT for 107 minutes. (*Id.* at 8). At some point in time after she returned to work, Plaintiff applied and was selected for a position in "Damage and Control." (*Id.* at 8). On two occasions Plaintiff sought a shift change to get away from Jeffreys, Byers, and Brian Peters of HR. (*Id.*). Plaintiff did not receive a shift change, but Jeffreys was transferred to a different department and Byers was transferred to a different shift. (*Id.* at 8-9).

About one year later, on January 26, 2017, Plaintiff was sitting in her car in Defendant's parking lot, before her shift began, while it was still dark, when William Alexander, a white male co-worker in Plaintiff's department, approached her vehicle and said, "I'm bigger than you. I'm faster than you. If I catch you on the road and cut off another vehicle, driving like you do, I'll make sure I put your ass in a ditch!" (*Id.* at 9).

3

Plaintiff was "in shock" that she had been "threatened, again, for no reason by another white male." (*Id.* at 9-10). A witness to the event reported it to HR, as did Plaintiff. (*Id.* at 10). The next day, HR told Plaintiff that "the matter was taken care of." (*Id.*). However, Alexander was back at work on March 1, 2017, and, when Plaintiff questioned HR, she was told he won his appeal; that is, he was reinstated. (*Id.* at 11). Plaintiff left the workplace to file a police report and a complaint with the Department of Labor for a hostile work environment. (*Id.* at 12). Plaintiff worked sporadically until March 8, 2017, because she was not capable of functioning under the working conditions. (*Id.* at 12-13). During this time, HR determined that it did not find Plaintiff's "life to be in danger." (*Id.* at 13).

Upon her return to work on March 8, 2017, Plaintiff was told that Alexander had resigned, but Plaintiff looked him up in the system and he was designated "active." (*Id.* at 14). The next day, Plaintiff was asked to report to HR. (*Id.* at 14). Plaintiff was questioned by HR and, in turn, she voiced her concerns that Alexander was "active" in the system: "he can get his badge activated, walk in here with a gun, sho[o]t me, throw the gun in the compactor, and walk out the front door like nothing happened." (*Id.* at 15). Plaintiff became extremely agitated, left the meeting, and returned to work. (*Id.*).

On March 10, 2017, Plaintiff's manager, Rushit Mehta, asked her why she was not working the day before, and Plaintiff replied that HR had upset her, and she could not get focused after her meeting with HR. (*Id.* at 16). Then, "in a harsh and forceful manner," Mehta asked Plaintiff why she was "not working for 221 minutes on yesterday." (*Id.* at 17). Plaintiff states that she was "[f]ed up," said "I'm done," "left to report" to the General Manager, but he was not in his office; she "clocked out and left for

4

the day." (Id.). Plaintiff thought she was being treated unfairly by HR and her manager, and that she "was being retaliated against for speaking up for [her]self." (Id. at 17).

The next day, Plaintiff was approached by an HR representative and her manager, escorted to HR, and terminated. (Id.). Plaintiff filed a second charge of discrimination for retaliation on March 13, 2017, and received a notice of right to sue on November 3, 2017. (Id.). She seeks compensatory and punitive damages. (Id. at 20).

Defendant moves to dismiss on the grounds that Plaintiff: (1) has failed to plead sufficient facts to make out a plausible claim; (2) has failed to state a prima facie hostile work environment claim; (3) has failed to adequately plead a Title VII gender or race discrimination claim or a retaliation claim; and (4) cannot establish a claim for intentional infliction of emotional distress. (D.I. 8).

## LEGAL STANDARDS

In reviewing a motion filed under Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Because Plaintiff proceeds pro se, her pleading is liberally construed and her amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94. A court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). A Rule 12(b)(6) motion maybe granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable

to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 347. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

Plaintiff's amended complaint is rich in factual detail. The factual allegations are all "plausible." Thus, I accept all the factual allegations as true for the purpose of deciding Defendant's motion.

Title VII states, "It shall be an unlawful employment practice for an employer to . . . discharge any individual, or otherwise to discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

**Hostile Work Environment**. The hostile work environment, or harassment, claim, Count 2, alleges that: (1) Plaintiff was subjected to harassment, that is, threats of physical violence, by co-workers Jeffreys and Alexander; (2) the harassment was motivated by Plaintiff's race and gender; (3) their conduct was not welcome; (4) a reasonable person in her position would find the work environment hostile and abusive; (5) Plaintiff believed her work environment was hostile or abusive as a result of her co-workers' conduct; and (6) she suffered a "tangible employment action" as a result. (D.I. 6 at 19).

Defendant argues the amended complaint does not contain facts to satisfy the elements of a hostile work environment claim because Plaintiff does not allege harassment based upon her gender or race, she did not suffer severe or pervasive harassment, and she cannot show that Defendant is liable for Plaintiff's co-workers' alleged harassment pursuant to respondeat superior. (D.I. 8 at 6-8). Plaintiff opposes and refers to numerous paragraphs in the amended complaint to support her position that the amended complaint adequately alleges a hostile work environment claim. (D.I. 9 at 3-9).

To state a claim for a hostile work environment, Plaintiff must show: (1) that [she] suffered intentional discrimination because of [her gender or] race; (2) the discrimination was pervasive or regular; (3) the discrimination detrimentally affected [her]; (4) the discrimination would detrimentally affect a reasonable person of the same [sex or] race in that position; and (5) the existence of respondeat superior liability." *Aman v. Cort*

*Furniture Retail Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996). "The first four elements establish a hostile work environment, and the fifth element determines employer liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

The Court first considers whether the allegations constitute the sort of conduct courts have found to constitute hostile work environment harassment. "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*discriminat[ion]*' . . . because of . . . sex [or race]." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Hence, "[v]erbal and physical harassment, no matter how unpleasant and ill-willed, is simply not prohibited by Title VII if not motivated by the plaintiff's gender [or race]." *Koschoff v. Henderson*, 109 F. Supp. 2d 332, 346 (E.D. Pa. 2000), *aff'd sub nom.*, *Koschoff v. Runyon*, 35 F. App'x 357 (3d Cir. 2002). "In assessing whether conduct is severe or pervasive, courts consider the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance.'" *Kokinchak v. Postmaster General*, 677 F. App'x 764, 767 (3d Cir. 2017) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). "[I]n considering the totality of the circumstances, [the Court] filters out 'simple teasing, offhand comments, and isolated incidents.'" *See id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Here, Plaintiff complains of two incidents involving two different co-workers approximately one year apart. Plaintiff describes the first incident as a verbal threat of physical violence made by Jeffreys, a person of the opposite sex and a different race, while they were at their work station. The amended complaint alleges that Plaintiff

8

became "irritated" by Jeffreys' action when his arm went across her face and reached to pull out a box Plaintiff had just made. Plaintiff pushed the box back, telling Jeffreys she did not need it, and Jeffreys replied, "You're about to get smacked." (D.I. 6 at 3). There are no allegations of physical contact and no allegations to connect the exchange to Plaintiff's race or gender. Plaintiff, a victim of domestic violence, describes its effect upon her.

The second incident described by Plaintiff occurred approximately a year later, in Defendant's parking lot, when Alexander, a person of the opposite sex and a different race, threatened Plaintiff, which it appears was as a result of him having just seen Plaintiff cut off another vehicle while driving her vehicle. Again, there are no allegations of physical contact and no allegations to connect the exchange to Plaintiff's race or gender. Again, Plaintiff describes its effect upon her.

As pled, the two incidents do not rise to the level of severity or pervasiveness to state a cognizable claim of harassment. Most notably, the allegations, while identifying the two co-workers who made the verbal threats as being white males, do not provide any legally-sufficient basis to connect the threats to Plaintiff's race or gender. Liberally construing the allegations, they do not suffice to allege a hostile work environment.

Even had Plaintiff adequately alleged a hostile work environment, Plaintiff failed to allege facts sufficient to hold Defendant liable for the conduct of Plaintiff's co-workers. When the harasser is a co-worker, employer liability attaches "only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate

9

remedial action." *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104-05 (3d Cir. 2009)

Plaintiff acknowledges in the amended complaint that there was a reasonable avenue for complaint. Plaintiff immediately reported both incidents. As alleged, Defendant took remedial actions. Jeffreys went to a different department. Alexander left employment. Plaintiff did not believe the actions taken were sufficiently severe, but that does not mean that Defendant did not provide a reasonable avenue for complaint. There are no allegations of further harassment after Plaintiff complained to management. Considering the foregoing, the Court finds that the amended complaint fails to state a hostile work environment claim. Therefore, the Court will grant Defendant's motion to dismiss the hostile work environment claim. However, because Plaintiff proceeds *pro se*, she will be given leave to amend this claim.

**Gender/Race Discrimination.** Count 3 alleges discrimination based upon race and gender occurred when Plaintiff's employment was terminated. The amended complaint alleges that Plaintiff, a Black/African American female, "known to be the Best at performing her job duties," was terminated, and race and gender were determinative factors in her termination. (D.I. 6 at 20).

Defendant moves for dismissal on the grounds that the amended complaint fails to allege facts sufficient to support a disparate treatment discrimination claim to give rise to an inference of intentional discrimination. In her opposition, Plaintiff states that she was treated much less favorably than her co-workers (white males) who threatened her because they remained employed and were not terminated for an act of violence, while

she was terminated after she made complaints and reported their misconduct to the proper authorities.

To state a claim under Title VII, a plaintiff must show that: "(1) [she] is a member of a protected class; (2) [she] was qualified for the position she sought to . . . retain; (3) [she] suffered an adverse employment action;" and (4) similarly situated persons who were not members of her protected class were treated more favorably or there are other "circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). A plaintiff need not convince the court of any of these elements at the motion to dismiss stage, but must submit more than the naked assertion that she suffered an adverse employment action because of her membership in a protected class. *See Santos v. Iron Mountain Film & Sounds*, 593 F. App'x 117, 119 (3d Cir. 2014).

As either race or sex discrimination claims, the facts, as pled, fail to state a claim upon which relief may be granted. While the amended complaint alleges that Plaintiff is a member of a protected class, suffered an adverse employment action, and was qualified to keep her job,[1] it fails to allege that similarly situated persons who were not members of her protected class were treated more favorably or that there are other circumstances that give rise to an inference of intentional discrimination. Plaintiff alleges that (due to depression), she had the second lowest performance level in the Inventory Control and Quality Assurance Department and that she had difficulty performing her job due to lack of focus. (D.I. 6 at 9, 16-17). Plaintiff alleges that on

---

[1] She describes her performance at an earlier time as being more than satisfactory, although she also describes a deteriorated performance before she was terminated. Given that Plaintiff is pro se, I think she has adequately alleged that she was qualified.

11

both occasions when she was terminated, the terminations followed evaluations that she had significant "time off task," and, on several occasions, that she had "left work." Other than Plaintiff's conclusory allegations, there are no circumstances alleged that would indicate the adverse employment actions were made on the basis of Plaintiff's race or gender.

As pled, the amended complaint fails to allege race or gender discrimination. Therefore, the Court will grant Defendant's motion to dismiss the claim. Because Plaintiff proceeds *pro se*, she will be given leave to amend this claim.

**Retaliation**. In Count 1, Plaintiff alleges she was dismissed from her position in retaliation for reporting verbal threats of violence made by her co-workers, noting that she was terminated after each report was made. (D.I. 6 at 18). Defendant moves for dismissal on the ground that the amended complaint fails to allege facts sufficient to support a retaliation claim.

Title VII prohibits an employer from discriminating against an employee "because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in protected activity, (2) the employer took a materially adverse action against her, and (3) there was a causal connection between the protected activity and the employer's action." *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 231 (3d Cir. 2007). In order for the activity opposing discrimination to be protected under Title VII, "the employee must hold an objectively reasonable belief, in good faith, that the activity [she] oppose[s] is unlawful under Title VII." *Moore v. City of*

*Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). This belief must be objectively reasonable under the actual jurisprudence of Title VII, and not based on the employee's subjective belief of what Title VII prohibits or should prohibit. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001).

Plaintiff alleges she was terminated in retaliation for complaining about verbal threats by her co-workers. However, Plaintiff does not allege that she engaged in protected activity. Instead, Plaintiff complained her co-workers verbally threatened her but, in doing so, made no reference to discrimination on account of her gender or race. *See Aspilaire v. Wyeth Pharm., Inc.*, 612 F.Supp.2d 289, 308–09 (S.D.N.Y. 2009) ("The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally. . . . While plaintiff may have believed that she was the victim of discrimination, an undisclosed belief of such treatment will not convert an ordinary employment complaint into a protected activity.'"). Plaintiff is a domestic violence victim, and her co-workers may have violated Defendant's "zero-tolerance workplace violence" policy, but their verbal threats did not violate Plaintiff's rights under Title VII. *See Johnson v. City Univ. of N.Y.*, 48 F. Supp. 3d 572, 577 (S.D.N.Y. 2014) ("[I]t is objectively unreasonable to believe that complaining about poor treatment in the workplace entirely unrelated to any trait, protected or otherwise, is a 'protected activity' under Title VII."). Because Plaintiff did not engage in protected activity, the retaliation claim fails.

Plaintiff did, however, engage in protected activity when she filed charges of discrimination, but those charges, each time, were filed after Plaintiff's employment was

13

terminated, not before. (See D.I. 6 at 6, 17). Hence, the amended complaint does not allege that Plaintiff was terminated in retaliation for filing the charges of discrimination with the Department of Labor and/or EEOC.

Because Plaintiff proceeds *pro se*, she will be given leave to amend the claim.

**Intentional Infliction of Emotional Distress**. Count 4 alleges intentional infliction of emotional distress under Delaware law. The amended complaint alleges Defendant is responsible for the intentional or reckless conduct of its employees whose conduct in threatening Plaintiff's life was extreme and outrageous. (*Id*. at 20). Defendant moves for dismissal on the grounds that the claim is barred by Delaware's Workers' Compensation Statute, 19 Del. C. §2304 and, regardless, the facts are insufficient to support a claim for intentional infliction of emotional distress. Plaintiff does not appear to oppose Defendant's motion to dismiss Count 4.

The Delaware Workers' Compensation Act provides the exclusive remedy for employees injured at work. 19 Del. C. § 2304. However, "claims that involve a *true intent* by the employer to injure the employee fall outside of [Delaware's] Workers' Compensation Act and remain separately actionable as common law tort claims." *Rafferty v. Hartman Walsh Painting Co.*, 760 A.2d 157, 159 (Del. 2000). "[T]o survive a motion to dismiss, there must be more than a mere allegation that there was an intentional injury; there must be facts alleged which, if true, show deliberate intent to bring about an injury." *Id*. at 160. "In other words, an employee must allege facts that, if true, would show that the employer intended to injure her. It would not be enough to allege facts showing that the employer intended to do an action and that the worker was

injured as a result of that action. Specific intent is required." *E.E.O.C. v. Avecia, Inc.*, 151 F. App'x 162, 166 (3d Cir. 2005).

Even very liberally construing the allegations, the amended complaint does not allege that Defendant specifically intended to cause Plaintiff harm. There being no true intent by Defendant to injure Plaintiff, the emotional distress claim arose in the context of Plaintiff's employment and within the ambit of Delaware's Workers' Compensation Statute. Count 4, therefore, is barred by Delaware's Workers' Compensation Statute. Defendant's motion to dismiss Count 4 will be granted.

## CONCLUSION

Based upon the above discussion, the Court will deny in part and grant Defendant's motion to dismiss the amended complaint. (D.I. 7). Count 4 will be dismissed with prejudice. Plaintiff will be given leave to amend Counts 1, 2, and 3.

An appropriate order will be entered.